IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.  CRIMINAL NO. 1:18CR156-LG-JCG-1
CIVIL NO. 1:23CV157-LG

**MICHAEL ANTHONY HERRERA**

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S SECTION 2255 MOTION

**BEFORE THE COURT** is the [138] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by Defendant Anthony Herrera. The Motion has been fully briefed. After thoroughly reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Herrera's Motion should be denied without an evidentiary hearing.

BACKGROUND

On September 25, 2018, a Criminal Complaint was filed against Herrera, and Mr. John S. Garner was appointed to represent him as counsel. Soon afterwards, a grand jury charged Herrera with conspiracy to possess with intent to distribute methamphetamine and heroin, possession with intent to distribute methamphetamine, and possession with intent to distribute heroin. (Indictment, ECF No. 13). In October 2018, Herrera retained Mr. E. Carlos Tanner, III, because he was dissatisfied with Mr. Garner's representation. The Court permitted Mr. Garner to withdraw. After Herrera became dissatisfied with Mr. Tanner's

representation, he retained Mr. Michael W. Crosby to represent him, and Mr. Tanner was permitted to withdraw.

Mr. Crosby filed a [38] Motion for Independent Testing of the weight and purity level of the drugs in question, as well as a [39] Motion to Suppress statements made by Herrera and evidence seized at the time of his arrest. The Court entered an [42] Order granting the Motion for Independent Testing and an [44] Order denying the Motion to Suppress. Mr. Crosby then filed a [46] Motion for Independent Testing of a recording made by a body camera at the time of his arrest to determine whether it had been edited. The Court granted in part and denied in part the Motion for Testing of the Recording, thus permitting Herrera's expert to compare the original recording with the copy provided to Herrera by the Government during discovery. (Order, ECF No. 48). Herrera filed pro se [50, 51] Motions seeking permission to assist Mr. Crosby as co-counsel and to obtain certain evidence, which were denied by the Court.

On July 15, 2019, Herrera pled guilty to count 3 of the Indictment (possession with intent to distribute one kilogram or more of a mixture or substance containing heroin) without the benefit of a plea agreement. Prior to sentencing, Herrera filed a pro se [68] Motion to Withdraw his Guilty Plea. He claimed that he pled guilty out of desperation because he had been led to believe that a trial would take place even though "no documents or any discovery was [sic] disclosed to the Defendant" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He also filed a pro se [69] "Motion for Ineffective Counsel," stating that he had dismissed Mr. Crosby as his

attorney. The Court permitted Mr. Crosby to withdraw, and it appointed Mr. John William Weber from the Federal Public Defender's Office to represent Herrera. However, Herrera continued to file pro se motions, and Mr. Weber filed a Motion for permission to withdraw as counsel. At a hearing held soon afterwards, Herrera informed the Court that he wished for Mr. Weber to continue representing him, so Mr. Weber's Motion to Withdraw was denied. Mr. Weber filed a Motion seeking permission for Herrera to withdraw his guilty plea.

The Government did not oppose the Motion to Withdraw Guilty Plea, so the Court entered an Order granting Herrera's Motion. Mr. Weber filed a [81] Motion seeking permission for Herrera to assist in his representation and for a complete paper copy of the entire discovery file to be provided to Herrera at the Harrison County Adult Detention Center where he was housed. Due to "concerns over dissemination of witness statements or information about the confidential informant in prison," the Court denied the Motion. (Order, ECF No. 83).

The pretrial conference and trial were continued on multiple occasions due to the COVID-19 pandemic. Herrera continued to file pro se motions, which were denied because he was represented by counsel. On October 1, 2020, Assistant Federal Public Defender Leilani Leith Tynes entered an appearance as co-counsel for Herrera.

On April 12, 2021, Herrera once again pled guilty to count 3 of the Indictment. The Court sentenced him to 240 months of imprisonment and 5 years of supervised release, a $7,500.00 fine with interest waived, and a $100.00 special

assessment. (J., ECF No. 123). Counts 1 and 2 of the Indictment were dismissed pursuant to the plea agreement. (*Id.*) Herrera appealed his conviction and sentence, claiming that the Court erred in denying his request for a reduction for acceptance of responsibility. The Court of Appeals affirmed Herrera's conviction and sentence on the basis that his conduct was not consistent with acceptance of responsibility. Herrera then filed this Section 2255 Motion.

## DISCUSSION

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Relief under . . . § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

## I. HERRERA'S FOURTH AMENDMENT CLAIMS

Herrera argues that his sentence should be vacated because (1) his warrantless arrest and the search and seizure related thereto violated his Fourth Amendment rights, and (2) the Government violated his Fourth Amendment rights because it knew that it was relying on fabricated evidence, that portions of body camera video of the arrest had been edited or deleted, that the consent to search

Herrera's hotel room had been forged, that some of the testimony the Government relied on was false, and that recordings in evidence had been mistranslated.

When a defendant enters a guilty plea, he "admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction." *United States v. Cothran*, 302 F.3d 279, 285–86 (5th Cir. 2002). Therefore, he waives all claims of governmental misconduct and Fourth Amendment violations. *Id.* Nevertheless, "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2). If the defendant's appeal of the district court's decision on the motion is successful, he can withdraw his guilty plea. *Id.* However, defendants do not have a right to file a conditional guilty plea, and the court and the government must consent. *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999). Therefore, all pleas are presumed to be unconditional. *Id.* at 187.

On the second occasion that Herrera pled guilty, the parties agreed to a conditional plea that reserved Herrera's right to appeal the Court's denial of his Motion to Suppress as well as the sentence imposed. (Tr. at 3-4, ECF No. 134; Court's Sealed Ex. C-1, ECF No. 11). The Court rejected the conditional plea to the extent that it preserved Herrera's right to appeal the denial of his Motion to Suppress. (Tr. at 3-4, ECF No. 134). The parties engaged in additional negotiations, and Herrera pled guilty, executing a plea agreement that did not

retain the right to appeal the denial of the Motion to Suppress. (*Id.*; *see also* Executed Plea Agreement, ECF No. 111). During the plea colloquy, the Court ensured that Herrera was aware of the rights he was waiving by pleading guilty. For example, the Court asked Herrera the following question, to which Herrera responded, "Yes, Your Honor":

> Do you also understand that if you enter a plea of guilty to Count No. 3, and if the Court accepts your plea of guilty, you will be waiving, that means giving up the right to trial, and all non-jurisdictional rights that may be associated with trial as I've just described them and as they exist in law; do you understand that?

(Tr. at 22, ECF No. 134). Herrera's claims of prosecutorial misconduct and violation of his Fourth Amendment rights must be denied because Herrera waived them by pleading guilty.[1]

## II. HERRERA'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Herrera also claims that his sentence should be vacated because his attorneys provided ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a defendant must show (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020). Failure to establish either prong of this test defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

---

[1] Herrera argues in a reply that he should have been given personal access to the discovery in his cases and that his motion for recusal should have been granted. These arguments were also waived when he pled guilty.

To establish deficient performance, a defendant must overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690; *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). Counsel's performance is to be accorded "a heavy measure of deference." *Rivas-Lopez*, 678 F.3d at 357 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011)).

To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court has defined reasonable probability as "probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 170 (quoting *Strickland*, 466 U.S. at 694). It has also explained that "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 111-12 (2011).

## A.  MR. GARNER

Herrera claims that Mr. Garner tried to convince him of incorrect information concerning the existence of a video. He also claims that Mr. Garner stated that Herrera signed a consent to search form at the time of his arrest. Herrera has submitted an affidavit signed by the mother of his child, Heather Martinez, in which she testifies that Herrera told her he was dissatisfied with Mr. Garner's representation. (Affidavit, ECF No. 148). She does not state that she personally

witnessed any misconduct on the part of Mr. Garner or even explain the basis for Herrera's dissatisfaction with Mr. Garner.

Mr. Garner, whose representation of Herrera was "limited to the detention hearing and efforts to obtain bail," testified by Affidavit regarding his efforts to obtain bail for Herrera as well as his attempts to obtain information regarding Herrera's arrest and the searches of Herrera's hotel room and vehicle. (Affidavit, ECF No. 142). The transcript of the preliminary hearing and detention hearing reveal that Mr. Garner provided vigorous representation to Herrera. (Aff., Ex. 1, ECF No. 142-1). This transcript also supports Mr. Garner's testimony that the consent to search form had not been provided in discovery at the time of the hearing and that an agent denied the existence of a video of the arrest while on the witness stand. (Aff., Ex. 1 at 7, 9, 11, ECF No. 142-1).

There is also no indication that Mr. Garner intentionally misled Herrera regarding the video or consent form, since Mr. Garner could only rely on the information provided by the Government at that time and Herrera certainly knew whether he signed the consent form. Herrera was aware of the video's existence before he decided to plead guilty because it was discussed at length at the motion hearing held on May 14, 2019, over two years before Herrera pled guilty.

Nevertheless, even if Herrera had demonstrated a deficient performance on the part of Mr. Garner, Herrera has not demonstrated prejudice because he has not explained how Mr. Garner's representation negatively affected his decision to plead guilty over two years later. Furthermore, Herrera's apparent contention that this

Court should find that Mr. Garner provided ineffective assistance merely because Herrera was dissatisfied with his representation is not well taken because that is not the appropriate standard for evaluating ineffective assistance of counsel claims. *See Strickland*, 466 U.S. at 687-88. Herrera's claim that Mr. Garner provided ineffective assistance is denied.

## B.  MR. TANNER

Herrera retained Mr. Tanner to represent him, and Mr. Tanner entered an appearance in the case on October 29, 2018. Herrera claims that Mr. Tanner provided ineffective assistance by refusing to look into constitutional issues, conduct discovery, or file motions proposed by Herrera. He also alleges that Mr. Tanner rushed him and made incorrect statements to him while he was attempting to review the discovery contract, which prohibited him from having discovery in his possession at the prison. Herrera submits an [152] Affidavit signed by Heather Martinez in which she testifies that Mr. Tanner refused to talk with her about matters protected by attorney-client privilege, but he had previously discussed the case with her. She claims that Mr. Tanner would not accept Herrera's phone calls and that Herrera expressed dissatisfaction with Mr. Tanner's representation. On February 12, 2019, Herrera filed a pro se [30] Motion claiming Mr. Tanner provided ineffective assistance of counsel, and the Court permitted Mr. Tanner to withdraw as counsel on February 22, 2019.

Mr. Tanner filed an [147] Affidavit claiming he provided effective assistance to Herrera and described the work he performed on Herrera's behalf. He testified

that he "negotiated a favorable plea offer for Mr. Herrera, the same plea agreement he ended up accepting and entering with the Court some five months after Herrera obtained new counsel . . . ."  (Aff. at 2, ECF No. 147).  Mr. Tanner explains that Herrera's dissatisfaction with his representation arose from: (1) Mr. Tanner's refusal to discuss matters protected by attorney-client privilege with Herrera's sister and girlfriend; (2) Mr. Tanner's refusal "to make frivolous claims about [Herrera's] signature having been forged on a consent to search form"; and (3) Herrera's apparent belief that Mr. Tanner was working for the Government after he presented Herrera with a proposed plea agreement and supplement.  Mr. Tanner asserts that he chose not to file motions asserting arguments requested by Herrera because he felt that the arguments were frivolous and/or meritless.  He also denies rushing Herrera or coercing him into signing the discovery order.

Once again, there is no evidence, testimony, or argument indicating that any action on the part of Mr. Tanner prejudiced Herrera's case.  Herrera pled guilty on April 9, 2021, over two years after Mr. Tanner was permitted to withdraw from representing him.

## C.  MR. CROSBY

Mr. Crosby entered an appearance as Herrera's retained attorney on February 19, 2019.  (Notice, ECF No. 32).  Herrera claims that Mr. Crosby provided ineffective assistance because Herrera was precluded from reviewing any discovery and was not permitted to approve the [39] Motion to Suppress filed by Mr. Crosby. Herrera claims that the Motion to Suppress was incriminating because it was

"[f]alsely written as if petitioner was the only person in contact with the CI." (Def.'s Mem. at 8, ECF No. 138). He also complains that the Motion did not reveal the Government's role in the drug transaction or misconduct on the part of the agents in forging a consent form and deleting a video. Furthermore, he claims that Mr. Crosby did not call enough witnesses to testify or make certain objections at the suppression hearing. Herrera has produced an affidavit signed by Heather Martinez in which she testifies that she made efforts to have evidence tested, but the evidence could not be tested because Mr. Crosby refused to give the evidence to the lab. (Aff., ECF No. 149).

Mr. Crosby has submitted an affidavit in which he testifies that Herrera told him that some of the evidence was fabricated because he does not speak Spanish fluently. (Aff., ECF No. 146-1). When Mr. Crosby notified the Government of this concern, he was provided with a video recording that demonstrated that Herrera is fluent in Spanish. Herrera also told Mr. Crosby that the consent to search form was forged, but an expert hired by Herrera to analyze the handwriting called Mr. Crosby and informed him that the signature on the consent form was clearly Herrera's signature.

After that, Herrera told Mr. Crosby that the agents had misrepresented the type of drugs that he was charged with possessing. (*Id.*). Mr. Crosby arranged for the drugs to be tested by a reputable company. The testing revealed that the drugs were the type of drugs that Herrera was charged with possessing. Although Mr. Crosby had concerns about Herrera's past misrepresentations, he continued to

analyze and discuss possible defenses and motions with Herrera. He explained to Herrera that he could not file frivolous motions, and Herrera appeared to understand but proceeded to file pro se motions. Mr. Crosby further testified:

> Mr. Herrera wanted me to file separate motions to acquire various types of discovery; however, the Court had already Ordered the Government to provide every type of discovery, including incriminating and exculpatory information, *Brady* material or otherwise. I showed the discovery to Mr. Herrera, and I got permission from the Harrison County Jail to take in electronic devices to play all recordings to him. I had my law clerk sit with him with every recording so that he could listen to whatever he wanted to listen to or see, over and over. I then went to the jail to see him to make sure that he saw everything he wanted to see and hear[d] whatever he wanted to hear. It should be noted that for the most part, he had little interest in listening to anything. In fact, one of the last times that I visited him at the jail, I took my young law clerk, who is much more familiar with electronics, and for some reason, he never made eye contact with me and directed all questions and responses to my law clerk.

(*Id.* at 3, ECF No. 146-1).

A review of the Motion to Suppress and the transcript of the suppression hearing, as well as the other motions Mr. Crosby filed on Herrera's behalf, reveals that Mr. Crosby's representation was not deficient. He diligently represented Herrera despite difficult circumstances and vigorously advocated on his behalf. Contrary to Herrera's assertions, Mr. Crosby did not incriminate Herrera in the Motion to Suppress he filed with the Court. He asserted an entrapment defense, sought suppression of evidence and statements, and demanded information concerning the confidential informant.

Finally, even if Mr. Crosby's representation had been deficient, Herrera has not demonstrated the required element of prejudice. He elected to plead guilty

while Mr. Crosby was representing him, before withdrawing his guilty plea. He later pled guilty once again and waived his right to a trial.

## D. MR. WEBER AND MRS. TYNES

Mr. Weber of the Federal Public Defender's Office was appointed to represent Herrera on October 15, 2019. Herrera argues that Mr. Weber refused to "relitigate" the suppression hearing or perform testing to prove that the Government's documentary evidence was "fabricated." (Def.'s Mem. at 19-22, ECF No. 138). According to Herrera, Mr. Weber would not let him look at transcripts of phone calls that were provided in discovery. He alleges that he was not allowed to speak at the hearing on the Motion to Withdraw that was filed by Mr. Weber.[2] The Motion to Withdraw was denied after Herrera informed the Court that he wished for Mr. Weber to continue to represent him.

He argues that Mr. Weber should not have filed a [84] Motion to Produce Herrera's cell phone, which had been seized by the Government, for inspection and forensic evaluation by the defense team. Herrera appears to misunderstand the purpose of Mr. Weber's Motion because he argues:

> Petitioner was informed by John W. Weber that the government wanted phone messages. Petitioner verbally expressed his concerns and desire to refuse, fearing potential self[-] incrimination, or prejudice. Weber told petitioner there was nothing to argue and had

---

[2] The transcript of the hearing on Mr. Weber's Motion reveals that Herrera was merely prevented from speaking out of turn and from interrupting Mr. Weber and the Court. (Tr. at 2, ECF No. 129). Herrera was permitted to speak during the hearing, and he informed the Court that he was satisfied with Mr. Weber's representation thus far and he wished for Mr. Weber to continue to represent him. (*Id.* at 6-7; 9-10).

> no choice, and so Weber proceeded to file natural unopposed motion for phone extraction of petitioner's phone messages.

(*Id.* at 26).  Mr. Weber was seeking the phone in order to aid in Herrera's defense, not to assist the Government.  The Government already possessed the phone.

Herrera further claims that Mr. Weber failed to protect him, which caused Herrera to file pro se motions, which in turn caused him to lose a sentencing adjustment for acceptance of responsibility.  Multiple attorneys and the Court instructed Herrera not to file pro se motions, but he did so anyway.  Furthermore, Mr. Weber's decisions as to which motions to file are entitled to great deference. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Counsel's strategic decisions must be given a strong degree of deference.").

Herrera next states that Mr. Weber and Mrs. Tynes told him not to allege agent misconduct in his allocution, which left him "[p]aralyzed and in shock."  (*Id.* at 39).  He further asserts that his attorneys should have demonstrated that the contraband he delivered was "within the United States" in order to avoid an importation enhancement.

Herrera states that he felt hopeless because Mr. Weber, Mrs. Tynes, and other personnel in the Office of the Public Defender wouldn't allow him to manage his case.  He claims he was "forced to plead guilty" because the Office of the Public Defender failed test evidence, to investigate the charges against him, to gather evidence, and to "move to disqualify" the confidential informant.

Finally, he claims that Mr. Weber provided inadequate assistance by failing to object to an "improper change [of the] plea agreement" by the Court.  (*Id.* at 25).

He accuses Mr. Weber and Mrs. Tynes of failing to file a notice of appeal on his behalf, so he filed a pro se notice of appeal. Herrera also alleges ineffective assistance of counsel on appeal because his attorneys refused to raise all of the arguments he wanted to raise.

Mr. Weber filed an affidavit opposing all of Herrera's arguments of ineffective assistance and describing the efforts that he and the Federal Public Defender's Office made to investigate and defend the charges against Herrera, to inform him of his rights, and to prepare his case for trial. Mr. Weber testifies:

> We retained numerous experts to assist with our investigation of this case and to help determine if we had a plausible defense. These experts included a handwriting expert and an expert to review the audio recordings. It was determined that we did not have a good faith basis to pursue Herrera's concerns related to the audio recordings and his signature on the consent to search form. All of this was explained in detail to Mr. Herrera.

(Aff. at 4, ECF No. 144). Mr. Weber filed a Motion to allow Herrera his own copy of the discovery so that he could review it outside the presence of counsel, but the Court denied the Motion. Since the discovery order did not allow Herrera's attorneys to copy evidence and leave it with Herrera at the jail, "Herrera was advised that anytime he wished to review the discovery, arrangements would be made to have it available to him." (*Id.* at 4-5). According to Mr. Weber, the Office of the Public Defender also conducted "[a]n extensive investigation of the confidential informant." (*Id.* at 5). Mr. Weber explains:

> Although we believe that we could have successfully attacked the credibility of the confidential informant, this fact did not change the fact that Mr. Herrera was found in possession of methamphetamine and heroin on the date of his arrest and did not mitigate other

-15-

evidence that the government intended to use against him in their case in chief.

(*Id.* at 5).

An attorney's refusal to raise a "legally meritless claim" does not constitute ineffective assistance of counsel. *United States v. Slape*, 44 F.4th 356, 360 (5th Cir. 2022). Thus, Mr. Weber and Mrs. Tynes' refusal to object to the Court's rejection of a conditional plea was not ineffective assistance because a court is free to reject a conditional plea "for any reason or no reason at all." *See United States v. Cruz*, 455 F. App'x 508, 510 (5th Cir. 2011) (quoting *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992)). Furthermore, at the change of plea hearing, Herrera testified under oath that he knew he had the right to plead not guilty and to go to trial. (Tr. at 22, ECF No. 134). He also affirmed that no one had coerced him or induced him to plead guilty. (*Id.* at 14-15). He even testified that he was "fully satisfied with the counsel, the representation and the advice that the federal public defenders had given" him up to that point. (*Id.* at 13). Since "solemn declarations in open court carry a strong presumption of verity," *United States v. Strother*, 977 F.3d 438, 444 (5th Cir. 2020), Herrera's testimony in open court carries more weight than his current allegations of deficient representation. In addition, the record reflects diligent representation on the part of Mr. Weber and Ms. Tynes. His assertions of ineffective assistance are not well taken.

## CONCLUSION

Given his criminal history, Herrera was a not a stranger to federal court proceedings, and he displayed knowledge and experience as to the rights that he

waived by pleading guilty.  Numerous attorneys provided Herrera with more than adequate counsel and representation throughout his case and on appeal.

Finally, Herrera's guilt is not in question.  He admitted that he was guilty of Count 3 of the Indictment when he pled guilty on two occasions.  He called himself a "mule" in a pro se [70] Objection to the first PSR prepared in this case, and he admitted:

> The Defendant before you object to his charges against him, that he acknowledges he has done a specific and limited part in the (HSI CI) scheme to only the degree in the transporting, delivery, (couring) a property belonging to the government CI. . . .
> . . .
> The Defendant had only played a minimal role in this offense, to delivery property belonging to the government (HIS CI). . . .
> . . .
> The Defendant conduct was a minimum, limited role, and should only be accountable for his limited role, the transportation of contraband, the dropping off and nothing more, no money was to be picked up.  Just the delivery was to take place.  That was the Defendants role a (delivery man). . . .
> . . .
> The only charge the defendant feels is appropriate for his charge would be a mule charge.

(Obj. to PSR at 2, 4, 5, ECF No. 70) (typographical and grammatical errors in original).  In his Memorandum filed in support of his Section 2255 Motion, Herrera once again admits, "Petitioner was guilty of the end result but wanted to preserve petitioner's appellate rights to contest petitioner's conviction in the manner it was conducted to convict." (Def.'s Mem. at 22, ECF No. 138).  Herrera knowingly and voluntarily chose to waive those appellate rights when he pled guilty.  There is no support for a finding that a deficient performance by any of his attorneys caused him to waive those rights.

For all of these reasons, Mr. Herrera's Section 2255 Motion must be denied. A hearing is unnecessary because "the motion and the files and records of the case conclusively show that [Herrera] is entitled to no relief." *See* 28 U.S.C. § 2255(b). To the extent the Court has not addressed any of Herrera's remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [138] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by Defendant Anthony Herrera is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 27th day of March, 2024.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE